F. Ambrose Haughey and Another, Appellants, *v.* Belmont Quadrangle Drilling Corporation, Respondent.

Third Department, June 25, 1936.

*Fitch H. Stephens* [*Olin T. Nye* of counsel], for the appellants.

*Mandeville, Waxman, Buck, Teeter & Harpending* [*A. H. Harpending* of counsel], for the respondent.

RHODES, J. This case involves the sale of natural gas. On February 26, 1931, appellants entered into a written contract with the respondent for the sale to it of natural gas. The construction of this agreement is the issue in the case. The agreement recites that the sellers (the appellants here) are the owners of four oil and gas leases described as the Seth Allen fifty acres, Stewart Green eighty acres and Ed. Green one hundred acres, all situated in Tyrone township, Schuyler county, N. Y., and Bert Richtmyer sixty acres located in Reading township, Schuyler county, N. Y., " and any other oil and gas leases that they may acquire in Reading and/or Tyrone Township, Schuyler County, New York." It then provides that the sellers desire to sell the gas that may be produced from wells drilled or to be drilled on said lands and agree to sell to the buyer and the buyer agrees to buy this natural gas and then contains this provision: " It being distinctly understood and agreed that at all times when the supply of gas produced or controlled under contract by the Buyer shall be in excess of the market that can be found therefor, the Buyer need not take from the Sellers' well or wells in any one calendar month more gas than ten per cent of the gas marketed by the Buyer from *said field* during the preceding month."

The court below held that the contract was indefinite and ambiguous in that it failed to define the meaning of the parties as to the " field " specified in the paragraph of the contract above set forth.

In our view of the matter the contract is not ambiguous. It recites that the sellers are the owners of specified oil and gas leases in Tyrone township and Reading township " and any other oil and gas leases that they may acquire in Reading and/or Tyrone Township."

It further recites that the sellers desire to sell the gas that may be produced from the well or wells drilled " and from any other wells which may be drilled on said land before mentioned, and Buyer is willing and desires to purchase from Sellers the gas which may be produced from said well or wells." We think this is the field which the parties had in mind.

The court below by his opinion indicates that he found that there are two separate fields, the Altay field, as to the area of which there is not so much dispute, and the Wayne field. A part of the

Wayne field is in the town of Tyrone. Apparently, therefore, plaintiffs had the right to sink wells anywhere in the town of Tyrone and thereby apparently they could have tapped the Wayne field. Therefore, any gas which plaintiffs could thus have produced would have furnished a part of the total upon which a part of the ten per cent was to be computed.

It appears that the defendant has commingled the gas from the various pools in the Wayne field with no means of knowing the amounts to be segregated and, if this is the fact, the plaintiffs should be entitled to ten per cent computed upon the maximum amount thus produced in these fields. If this assumption is correct, then plaintiffs have not been paid for the full amount of ten per cent production within the intended field, and should be compensated for the balance of ten per cent for which they have not received payment.

However, if the language used in the contract is ambiguous, statements appearing in letters written both by defendant's president and its attorney dispel the uncertainty. The president of the defendant wrote to the plaintiff Walter on February 17, 1932, " Your contract does not cover the Wayne gas field as it is a separate and distinct field from the Dundee sour gas field. Therefore, you are not entitled to any percentage thru gas sales to the Iroquois. However, it would apply if you had producing acreage in the sweet gas field." The Wayne field is the sweet gas field and a portion thereof is in the town of Tyrone. The attorney for the defendant in a letter dated February 28, 1931, written to the attorney for the plaintiffs, inclosed with the contracts for execution, wrote, " Will you please have Mr. Walter and Mr. Haughey execute these and return two of them to me. Mr. Brewster [president of the defendant] limited the field to the Towns of Tyrone and Reading for the reason that he would not want to be pulled down into Chemung County or Ithaca, or down into Pennsylvania under the contract, but would only want it to apply to somewheres near the field where they are working."

The judgment should be reversed on the law and facts and a new trial granted, with costs to the appellants. Upon the new trial the amount owing to the plaintiffs under the contract, as construed in the foregoing opinion, is to be determined.

HILL, P. J., and McNAMEE, J., concur; CRAPSER and BLISS, JJ., dissent and vote to affirm.

Judgment reversed on the law and facts, and a new trial granted, with costs to the appellants. Upon the new trial the amount owing to the plaintiffs under the contract, as construed in the opinion, is to be determined.